JESSE A. BAKER,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Civil Action 2:19-cv-4323
Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Jesse A. Baker ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.     PROCEDURAL HISTORY

Plaintiff protectively filed his application under Title II of the Social Security Act for a period of disability and disability insurance benefits on November 5, 2015. (R. at 254–60.) He filed an application under Title XVI for supplemental security income that same day. (*Id.* at 261–66.) In both applications, Plaintiff alleged a disability onset of December 31, 2013. (*Id.* at

254, 261.)  Plaintiff's applications were denied initially on February 22, 2015, and upon

reconsideration on April 15, 2016.  (*Id*. at 194–99, 203–14.)  Plaintiff sought a hearing before an

administrative law judge.  (*Id*. at 215.)  Administrative Law Judge Matthew Winfrey (the "ALJ")

held a hearing on February 23, 2018, at which Plaintiff, represented by counsel, appeared and

testified.  (*Id*. at 103.)  Vocational expert Michael A. Klein, PhD (the "VE") also appeared and

testified at the hearing.  (*Id*.)  On September 25, 2018, the ALJ issued a decision finding that

Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 100–17.)  On

July 30, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's

decision as the Commissioner's final decision.  (*Id*. at 1–4.)  Plaintiff then timely commenced the

instant action.  (ECF No. 1.)

Plaintiff advances three contentions of error.  (Pl.'s Statement of Errors, ECF No. 10.)

Namely, Plaintiff asserts that remand is required because the ALJ (1) failed to include the need

for a cane in Plaintiff's residual functional capacity ("RFC"), (2) failed to properly evaluate the

opinion of consultative examiner, Mark E. Weaver, M.D., and (3) failed to properly evaluate the

opinions of his treating physician, Shelly Dunmyer, M.D.  The undersigned will limit discussion

of the evidence to those portions bearing on these contentions of error.

## II.      THE ADMINISTRATIVE DECISION

On September 25, 2018, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act.  (R. at 100–17.)  The ALJ first found that Plaintiff

meets the insured status requirements through December 31, 2018.  (*Id*. at 105.)  At step one of

the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since December 31, 2013, the alleged onset date of Plaintiff's disability. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: closed burst fracture of twelfth thoracic vertebra; lumbar degenerative disc disease; bilateral knee osteoarthritis; and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 106.)

At step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except occasional foot controls; occasionally climb ramps and stairs; never climb ladders, ropes, scaffolds; occasionally balance, stoop, kneel, crouch, crawl; occasional vibration; no exposure to workplace hazards such as unprotected heights or dangerous moving mechanical parts and no commercial driving.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(*Id*. at 106–07.)  In assessing Plaintiff's RFC, the ALJ considered the evidence of record, including Plaintiff's hearing testimony, treatment records and other clinical and laboratory findings, and medical opinion evidence.  (*Id*. at 107–11.)  As to the medical opinion evidence, the ALJ assigned "partial weight" to the opinion of Plaintiff's treating physician, Shelly Dunmyer, M.D., going to physical limitations (*Id*. at 109); "no weight" to Dr. Dunmyer's opinion going to mental limitations (*Id*. at 110); "other weight" to the opinion of consultative examiner Mark E. Weaver, M.D. (*Id*.); "partial weight" to the opinions of State agency medical consultants who reviewed Plaintiff's claim file (*Id*.); and "partial weight" to the opinion of consultative examiner Ellen J. Offutt, M.D.  (*Id*.)

At step five of the sequential process, the ALJ found that Plaintiff has no past relevant work.  (*Id.* at 111.)  Relying on the VE's testimony, the ALJ found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (*Id*.)  Examples include order clerk, optical assembler, and callout operator.  (*Id*. at 112.)  The ALJ further found that Plaintiff is capable of making a successful adjustment to such employment.  (*Id*.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.*)

### III.    RELEVANT EVIDENCE OF RECORD

The record evidence relevant to Plaintiff's contentions of error is summarized by source, below.

### A.    Treating Physician, Shelly Dunmyer, M.D.

### 1.    Treatment Notes

Dr. Dunmyer has been Plaintiff's primary care provider since at least January 24, 2013. (*Id*. at 329–416.)  Treatment notes from Dr. Dunmyer's practice reflect visits with Plaintiff occurring roughly every three months for various diagnoses, including degenerative joint and

disc diseases of the lumbar spine. (*See, e.g.*, *id*. at 379, 415, 507.) Most of the visits were for follow-up and to have prescriptions re-filled. (*See, e.g., id*. at 349, 354, 357, 363, 369, 375, 450, 464, 505, 517.) On a few occasions, Plaintiff presented with additional commonplace complaints such as sore throat (*Id*. at 372, 375) or headache (*Id*. at 462). Dr. Dunmyer and her colleagues consistently documented that Plaintiff "appears well-developed and well-nourished" (*see e.g., id*. at 349, 355, 375, 396, 463, 467) and "has normal mood and affect" (*see e.g., id*. at 349, 355, 358, 375, 452, 463, 498, 502). Generally, physical examination of Plaintiff showed normal results. However, with respect to Plaintiff's back and lower extremities, treatment notes occasionally state as follows:

> Inspection revealed no erythema, edema, or eccymosis. There was tenderness over the musculature in the lumbosacral spine. Range of motion was limited in flexion and extension secondary to pain. Lower strength was 5/5 and equal. Deep tendon reflexes were 2+ and equal in the lower extremities. Light touch sensory exam was intact. Straight leg raise was negative bilaterally in a seated position.

 (*Id*. at 360, 364, 451, 510, 514.) None of Dr. Dunmyer's treatment notes reflect use of a cane, or a need or prescription for one.

## 2.   Medical Opinions

On February 10, 2017, Dr. Dunmyer completed two Medical Source Statements related to Plaintiff's disability benefits claim: one going to his physical abilities, and a second going to his mental abilities. (*Id*. at 479–84.) In the physical Medical Source Statement, Dr. Dunmyer opined that Plaintiff is unable to lift/carry in excess of ten pounds. (*Id*. at 479.) She further opined that Plaintiff can only occasionally reach, handle, and finger; can stand and walk for a total of one hour in an eight-hour workday for ten minutes at a time; and can sit for a total of two hours in an eight-hour workday for ten minutes at a time. (*Id*. at 479–80.) Dr. Dunmyer opined that Plaintiff cannot use his feet for repetitive movements, and cannot bend, crouch, squat, crawl, or climb steps or ladders. (*Id*. at 480.) Finally, Dr. Dunmyer opined that Plaintiff is likely to

have five or more unscheduled partial or full day absences from work each month due to his diagnosed conditions, pain, and/or side effects of medication. (*Id*. at 481.) She based these opinions on Plaintiff's diagnoses of "history of T12 burst fracture, lumbar [degenerative joint disease] and [left] foot drop." (*Id*.) The opinion does not discuss use of a cane.

In the mental Medical Source Statement, Dr. Dunmyer opined that Plaintiff is not limited in areas related to social interaction or adaptation. (*Id*. at 482–83.) In the area of sustained concentration and persistence, however, Dr. Dunmyer opined that Plaintiff is *mildly* limited in his abilities to perform and complete work tasks at a consistent pace and to carry through instructions and complete tasks independently, and *moderately* impaired in his ability to perform at production levels expected by most employers. (*Id*. at 483.) Dr. Dunmyer explained that "[d]ue to [Plaintiff's] physical disabilities, he does suffer from some anxiety at times. This anxiety relative to his physical limitations could impact his ability to work as noted . . . above." (*Id*.)

## B. Consultative Examiner Mark E. Weaver, M.D.

At the request of the Board of Disability Determinations, Dr. Weaver examined Plaintiff on January 21, 2016. (*Id*. at 417–20.) Dr. Weaver summarized Plaintiff's subjective report of his condition and treatment as follows:

> [Plaintiff] states that he injured his lower thoracic area spine October 16th of 2000 in a motorcycle accident when he hit a deer and he flew 30 feet, landing in a ditch, sustaining T12 burst fracture. He states that he had no surgery but wore a back brace and was in a wheelchair for eight months and had one year of physical therapy rehabilitation. He states that he still has constant lower middle back area pain with numbness in both legs, left worse than the right, and weakness in distal muscle groups of both legs, left worse than the right, with left drop foot. He states that he does not use an [ankle-foot orthosis] brace but uses high-top boots for supporting his ankles now. He is limited in sitting, standing, walking and can only lift and carry about 10 pounds occasionally. He uses a cane occasionally but does not use a walker, a wheelchair, other splints, braces, or [transcutaneous electrical nerve stimulation] unit. His only treatment now is medication from family physician Dr. Shelly Dunmeyer [sic] in Zanesville, Ohio where [Plaintiff] visits once a month.

. . . He has no other medical treatment presently. He does not complain of long-tract signs or symptoms or bowel or bladder dysfunction.

(*Id*. at 417.) Dr. Weaver went on to detail his physical exam of Plaintiff:

> Physical exam revealed a well-developed, overly nourished 37 year old male who walked with a stiff, wide-based, bilaterally everted gait and a left limp with left partial drop foot noted today. He did not use any ambulatory aids, braces, or other special equipment in the exam today. He was only able to sit or stand for about 10 minutes at a time in the exam today, complaining of lower middle back area pain with prolonged positioning. He exhibited some balance difficulties and held onto objects in the hallway and exam room for balance assistance intermittently today. He did not become short of breath or complain of chest pain after walking 40 feet up and down the hallway in the clinic or after performing physical activities in the exam. . . .
>
> **Musculoskeletal Examination:**
> Inspection of the upper and lower extremities showed some atrophy of the left lower extremity compared to the right and there was no atrophy of the upper extremities by measurement comparison . . . . Strength testing in manual muscle testing against resisted motion showed consistent weakness in distal muscle groups of both lower extremities, left worse than the right, but strength testing was normal in proximal lower extremities and in both upper extremities. Active and passive motion by goniometer measure was restricted in both ankle hindfoot areas but was normal in other major joints of the extremities . . . . There was no tenderness crepitus, effusion, or gross ligamentous laxity noted in any of the joints of the extremities today. . . .

(*Id*. at 418–19.) Based on his examination of Plaintiff, Dr. Weaver opined that:

> [Plaintiff] would probably be limited in the performance of physical activities involving sustained sitting, standing, walking, climbing, lifting, carrying, operating at heights or around hazardous machinery, and travel involving driving due to use of foot pedals. He would probably be able to perform physical activities involving handling objects, speaking, hearing, following directions, and travel not involving driving.

(*Id*. at 420.)

## C.     Plaintiff's Hearing Testimony

Plaintiff testified before the ALJ at the February 23, 2018 hearing. (*Id*. at 118–45.)

During his testimony, Plaintiff confirmed that he suffered a burst fractured vertebra in October of

2000. (*Id*. at 128.) He further testified that the symptoms stemming from that injury have

"gotten way worse," prompting the subject application for disability benefits. (*Id*.) Of note, Plaintiff testified that a doctor prescribed a cane following his injury in 2000 and that he has used one since. (*Id*. at 127–28.) He further testified that he can walk short distances (*i.e.*, less than a city block) without a cane but cannot stand without it for lack of balance. (*Id*. at 132.) Plaintiff went on to testify that: he "rarely" drives, and only for short distances, due to numbness and swelling in his hands and fingers (*Id*. at 130); he cannot go to the grocery or do any house work (*Id*. at 128, 131); he has no hobbies (*Id*. at 131); he has difficulty sitting for extended periods due to back pain (*Id*. at 136–37); and he has difficulty climbing stairs due to drop foot (*Id*. at 129).

## D.     Consultative Examiner Ellen J. Offutt, M.D.

On March 19, 2018, Plaintiff was examined by Dr. Offutt. (*Id*. at 535–50.) Dr. Offutt summarized Plaintiff's subjective report of his condition and treatment as follows:

> **HISTORY OF PRESENT ILLNESS:** The claimant reports he has had back pain for 18 years. His last MRI was in the last five years and showed degenerative disk disease. He states that he takes Vicodin four times a day from his family doctor. He has never been sent to a specialist. Seven years ago, he had an increase in discomfort and did have 3 epidurals. He said they did not help. He is not clear on who performed those, but he states that he has never seen an orthopedic surgeon. He is not clear on why. He states he needs a cane to walk because of balance. He has radiculopathy that has developed in his lower legs with weakness. He states that he can only walk about 30 feet before he has back pain or climb 3 to 5 steps and he has to put both feet on each step. He states that he injured his lower back in the year 2000 in a motorcycle accident. When he fractured T12, he had no surgery, but wore a back brace. In the recent years, he has to use a cane more often to help his balance.

(*Id*. at 535.) Dr. Offutt's physical examination of Plaintiff revealed the following:

> **GENERAL:** The claimant walks with a wide-based everted gait. He then appeared to have a limp. He did walk with a cane to support him and improve his balance. He had no problems sitting or standing in the office. He would not perform many of the parts of the exam without his cane. The claimant appears stable at station and comfortable in the supine and sitting positions. . . .

> **NEUROLOGICAL:** . . . The claimant had decreased strength in his lower extremities with minimal sign of atrophy. Sensory modalities were abnormal and that he had decreased pinprick sensation in both legs to just below the knee. . . .

Cerebellar function was difficult to test because he refused to stand without his cane. He stated he could not walk on his heels or toes or perform tandem walking or stand on each foot. He could squat about half way.

(*Id*. at 537–38.) Based on her examination, Dr. Offutt summarized her opinion as follows:

**SUMMARY:** The claimant is a 39-year-old male who was in a motorcycle accident in the year 2000 and fractured T12. He states that he was in physical therapy for a period of time, but still has weakness in his lower legs, especially on the left and was manifested by his physical exam. He does have weakness. . . . I believe he would not be able to climb steps easily. He would not be able to walk easily. He could use his cane. I believe he can sit in an unrestricted fashion. He does take Vicodin for his discomfort. He would not be able to perform a job where he used foot pedals. He states he does not drive. He can walk from 30 to 60 feet with his cane before he has too much back discomfort or has cramps in his legs. . . .

It is difficult[ to] evaluate this man, seeing him only once. His grip strength was difficult to evaluate because he would not close his fingers around mine and actually squeeze. So, I believe that the grip strength is not accurate. He does have some neurological damage that has weakened his legs below the knee. He would not be able to walk on an uneven surface or climb steps regularly or climb a ladder. He would have difficulty squatting . . . .

(*Id*. at 538–39.) Dr. Offutt went on to complete a Medical Source Statement, in which she opined, *inter alia*, that Plaintiff requires the use of a cane to ambulate, that Plaintiff can ambulate only 10 feet without the use of a cane, and that the cane is medically required. (*Id*. at 545.)

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of

the Commissioner will not be upheld where the [Social Security Administration] fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the

claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.

2007).

## V.      ANALYSIS

Plaintiff now contends that remand is required because the ALJ: (A) failed to include the

use of a cane in Plaintiff's RFC, (B) failed to properly evaluate the opinion evidence of

consultative examiner, Dr. Weaver, and (C) failed to properly evaluate the opinions of his

treating physician, Dr. Dunmyer.  For the reasons discussed below, the undersigned finds that

each contention of error is without merit.

## A.      The ALJ properly declined to include use of a cane in Plaintiff's RFC.

Plaintiff first asserts that the ALJ erred by declining to include any need for a cane in

Plaintiff's RFC.  A claimant's RFC is "the most [the claimant] can still do despite [the

claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). If a cane is not medically required, it is not considered a limitation on a claimant's ability to work, *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002), and an ALJ is not required to incorporate the cane into the RFC. *Casey v. Sec'y of Health Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). *See also Lowe v. Comm'r of Soc. Sec.*, No. 2:15-cv-2837, 2016 WL 3397428, at *6 (S.D. Ohio June 21, 2016). Social Security Ruling 96-9p instructs as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). The burden is on the claimant to prove through clinical evidence that a cane is medically required. *Strain v. Comm'r of Soc. Sec. Admin.*, No. 5:12-cv-1368, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013).

In his Statement of Errors, Plaintiff argues that the ALJ improperly rejected Dr. Offutt's opinion that his cane was medically required. (Pl.'s Statement of Errors at 7, ECF No. 10.) Plaintiff asserts that Dr. Offutt's opinion is consistent with and supported by other evidence of record, including the significant restrictions on exertional and postural activities in Dr. Dunmyer's opinion (*see* R. at 479–80) and Dr. Weaver's observations of weakness and atrophy in Plaintiff's lower extremities (*see id.* at 418–19). (Statement of Errors at 9, ECF No. 10.) Plaintiff contends that remand is necessary as a result. (*Id.* at 10.)

The Commissioner counters that the ALJ reasonably concluded that Plaintiff did not require a cane and therefore did not err in declining to incorporate such a limitation into the RFC. (Def.'s Mem. in Opp'n at 4, ECF No. 12.) In support, the Commissioner points out that the ALJ considered and discussed various portions of the record that suggest Plaintiff is not as reliant on his cane as he now alleges. For example, the ALJ noted: that Plaintiff has made conflicting

statements as to when and how often he relies on a cane (*Id*. at 4; *see also* R. at 108, 132, 151);

that Plaintiff has made conflicting statements as to whether a cane was ever prescribed (*Id*. at 4–

5; *see also* R. at 108, 128, 151); that Plaintiff did not produce documentary evidence of a

prescription for a cane (*Id.* at 5; *see also* R. at 108); and that the record did not include any

medical evidence of Plaintiff's use of a cane outside of his encounter with Dr. Offutt (*Id*.; *see*

*also* R. at 108, 418, 537). Finally, the Commissioner asserts that the ALJ was not required to

accept Dr. Offutt's opinion and, in fact, assigned the opinion only "partial weight" because it was

internally inconsistent, not supported by other evidence of record, and unreliable due to

Plaintiff's self-limitation during the examination. (*Id*. at 5–6. *See also* R. at 110.) The

Commissioner notes that Plaintiff did not object to the ALJ's reasons for discounting Dr. Offutt's

opinion. (*Id*.)

The undersigned agrees with the Commissioner and finds that the ALJ did not err in

declining to include use of a cane in the RFC. It is well-settled that "where there is conflicting

evidence concerning the need for a cane, 'it is the ALJ's task, and not the Court's, to resolve

conflicts in the evidence.'" *Forester v. Comm'r of Soc. Sec.*, No. 2:16-CV-1156, 2017 WL

4769006, at *4 (S.D. Ohio Oct. 23, 2017) (quoting *Foreman v. Comm'r of Soc. Sec.*, No. 2:10-

cv-1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012)). The Court must instead

determine whether the ALJ's decision is supported by substantial evidence. *See Rogers*, 486

F.3d at 241. In this case, as laid out by the Commissioner, the ALJ considered and discussed the

various and often conflicting pieces of evidence bearing on Plaintiff's use of and reliance on a

cane. Importantly, the ALJ considered Dr. Offutt's opinion—the lone piece of clinical evidence

stating that Plaintiff's cane was medically required—and reasonably concluded that the opinion

was internally inconsistent, tainted by the fact that Plaintiff "clearly self-limited," and worthy of

only partial weight. (R. at 110.) In the absence of other clinical evidence indicating that Plaintiff's cane was medically required, the ALJ reasonably declined to include the cane in Plaintiff's RFC.

Plaintiff's argument for a contrary result is unavailing. In his Reply, Plaintiff asserts that the ALJ improperly overemphasized the absence of a prescription in the record. (Pl.'s Reply at 2–3, ECF No. 13.) Plaintiff asserts that a prescription is not necessary to fulfill the standard set forth in SSR 96-9p, and, therefore, the ALJ "essentially created his own legal standard by requiring documentation of a prescription in order to find that the assistive device was medically" required. (*Id*.) But review of the ALJ's decision makes clear that the ALJ did not, as Plaintiff suggests, simply rely upon the absence of prescription to conclude Plaintiff did not require a cane restriction. Rather, as discussed above, in addition to citing the absence of a prescription for a cane, the ALJ also discussed and relied upon *numerous* inconsistencies and inadequacies in the record evidence bearing on Plaintiff's need for a cane. Because substantial evidence supports the ALJ's determination, the undersigned finds this contention of error to lack merit.

Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.      The ALJ properly evaluated the opinion of the consultative examiner, Dr. Weaver.**

The second issue Plaintiff raises in his Statement of Errors is that the ALJ failed to properly evaluate the opinion of consultative examiner Mark E. Weaver, M.D. The ALJ must consider all medical opinions that he receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(c), 416.927(c). With respect to a consultative examiner's report, the ALJ will review the report to determine whether the specific information requested has been furnished. 20 C.F.R. §§ 404.1519p(a), 416.927p(a). If the ALJ determines that the report is "inadequate or

incomplete," the ALJ will contact the consultative examiner to request the missing information or a revised report. 20 C.F.R. §§ 404.1519p(b), 416.927p(b). "Adequacy" refers to whether the report provides "evidence which serves as an adequate basis for decisionmaking in terms of the impairment it assesses." 20 C.F.R. §§ 404.1519p(a)(1), 416.927p(a)(1). *See also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 122 (6th Cir. 2016). A complete report will generally include: (i) the claimant's chief complaint(s); (ii) a detailed description, within the area of the examiner's specialty, of the history of such complaint(s); (iii) a description and disposition of pertinent findings from examination or testing; (iv) the results of any testing performed; (v) the claimant's diagnosis and prognosis; and (vi) a medical opinion. 20 C.F.R. §§ 404.1519n(c), 416.919n(c). *See also* 20 C.F.R. §§ 404.1519n(d), 416.919n(d) ("When the evidence we need does not require a complete consultative examination . . . , we may not require a report containing all of the elements in paragraph (c)."). However, "the absence of a medical opinion in a consultative examination report will not make the report incomplete." 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6).

Dr. Weaver was engaged by the Bureau of Disability Determinations to complete a one-time, in-person examination of Plaintiff. (R. at 110.) Dr. Weaver submitted his report on January 21, 2016, including: a detailed summary of Plaintiff's subjective complaints and medical history, as represented to him; the results of his thorough physical examination; the results of manual muscle testing; a "probable" diagnosis; and an opinion that Plaintiff "would probably be limited in the performance of" certain work-related activities. (*Id*. at 417–25.) The ALJ considered Dr. Weaver's opinion and assigned it "other weight" for the following reasons:

> . . . Dr. Weaver presented a vague opinion without quantification or in vocationally relevant terms, simply indicating in part ". . . *probably would be limited in the performance of* . . . ." As the undersigned interprets Dr. Weaver's opinion to not

be inconsistent with the above assessed residual functional capacity, his opinion is given other weight.

(*Id*. at 110.)

Plaintiff now argues that the ALJ committed reversible error by discounting Dr. Weaver's opinion instead of contacting Dr. Weaver for more information or a revised report. (Pl.'s Statement of Errors at 11–12, ECF No. 10.) The undersigned disagrees. In Plaintiff's view, the ALJ's description of Dr. Weaver's opinion as vague and not in vocationally-relevant terms[2] constitutes an 'admission' that it was inadequate or incomplete. (*Id*. at 12.) As a result, he argues, the ALJ was required to ask Dr. Weaver to furnish additional information or prepare a revised report. (*Id*.) However, the Sixth Circuit and several of its constituent District Courts have held that a consultative examiner's report is not rendered "inadequate or incomplete" due to either the absence of a medical opinion or the inclusion of a "vague" one. *See Dooley*, 656 F. App'x at 122 (finding that ALJ was not required to contact consultative examiner whose opinion was found to be vague and unsupported by the evidence); 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6). *See also Shoults v. Comm'r of Soc. Sec.*, No. 2:19-cv-1425, 2020 WL 1242396, at *8–9 (S.D. Ohio Mar. 16, 2020) (finding that ALJ was not required to contact consultative examiner whose opinion was found to be vague); *Ingram v. Berryhill*, No. 1:17-cv-2163, 2018 WL 5634345, at *12 (N.D. Ohio Aug. 17, 2018) (same) *report and recommendation adopted,* No. 1:17-cv-2163, 2019 WL 416331 (N.D. Ohio Feb. 1, 2019); *Hamilton v. Comm'r of Soc. Sec.*, No. 1:15-cv-945, 2016 WL 4771238, at *5 (W.D. Mich. Sept. 14, 2016) (same). The undersigned therefore finds that the ALJ did not err by declining to contact Dr. Weaver for additional information.

---

[2] Plaintiff does not object to the ALJ's characterization of Dr. Weaver's opinion as vague and not in vocationally-relevant terms.

Plaintiff's second argument on this point also fails. Plaintiff takes issue with the ALJ's statement that he "interprets Dr. Weaver's opinion to not be inconsistent" with the assessed RFC. (Pl.'s Statement of Errors at 12, ECF No. 10.) In particular, he argues that the ALJ "seems to be suggesting that the [RFC] has been created and that the ALJ was weighting Dr. Weaver's opinions against that [RFC]." (*Id.*) Plaintiff asserts that "[t]his is backwards to how the evaluation process should go." (*Id.*) Plaintiff does not cite any authority for such proposition, nor does he identify any aspect of the ALJ's assessed RFC that he believes to be in conflict with Dr. Weaver's opinion. The ALJ must consider and evaluate all available medical opinion evidence in the record. 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c). However, the ALJ is not bound by any such opinion, and himself holds final responsibility for assessing the RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). The undersigned finds no error in the ALJ's consideration and evaluation of Dr. Weaver's opinion with respect to the RFC, which was in his sole dominion to assess.

As such, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## C.    The ALJ properly evaluated the opinions of Plaintiff's treating physician, Dr. Dunmyer.

The final issue Plaintiff raises in his Statement of Errors is that the ALJ failed to properly evaluate the opinion evidence of his treating physician, Shelly Dunmyer, M.D. As noted above, the ALJ must consider all medical opinions that he receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(c), 416.927(c). When a treating physician's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

objective medical filings alone . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley*, 581 F.3d at 406 (internal quotations omitted). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If the ALJ does not assign controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating physician's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [a claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Plaintiff argues that the ALJ erred in discounting the opinions submitted by Plaintiff's treating physician, Dr. Dunmyer. (Pl.'s Statement of Errors at 13, ECF No. 10.) The undersigned disagrees. The ALJ assigned partial weight to Dr. Dunmyer's opinion on Plaintiff's physical abilities. (R. at 109.) The ALJ explained that he discounted Dr. Dunmyer's opinion because the severity of the limitations reflected therein are not supported by the other evidence of record:

> At Exhibit 6F, Dr. Dunmyer provided an opinion that would provide for the claimant only being able to sit, stand and/or walk for a total of four hours in an eight hour workday and an inability to perform listed postural activities; yet, within her treatment notes as discussed above, there are no significant clinical abnormalities documented beyond at time the claimant's lumbosacral range of motion being limited inflexion and extension secondary to pain (see e.g. Exhibits 1F; 5F/4; 11F). Typically, he is noted to have negative straight leg raising in the seated position and while at times, he is noted to have tenderness and reduced range of motion at the knees, other times, there are normal findings. There is no clinical evidence to support the claimant would be limited to one hour standing or walking, or two hours sitting. Additionally, Dr. Dunmyer provided a conclusory opinion with respect to anticipated partial or full day unscheduled absences from work due to the diagnosed conditions, pain and/or side effects of medication; yet again, such an assumption is not supported by the evidence of record, including Dr. Dunmyer's own notes. Moreover, she does not provide sufficient clinical and laboratory data to support her conclusion, merely a statement of the claimant's alleged diagnoses. Therefore, the undersigned gives Dr. Dunmyer's opinion at Exhibit 6F partial weight, but only insofar as it is consistent with the residual functional capacity assessed above.

(*Id*.) The ALJ went on to assign no weight to Dr. Dunmyer's opinion on Plaintiff's mental abilities. (*Id*. at 109–10.) The ALJ explained his reasoning as follows:

> Additionally, Dr. Dunmyer completed a representative supplied medical source statement with respect to mental abilities (Exhibits 7F). It is notable that Dr. Dunmyer is a family medicine doctor and not a mental health specialist. However, it is critical to point out that while Dr. Dunmyer indicated that "*Due to patients physical disabilities, he does suffer from some anxiety at times. This anxiety relative to his physical limitations could impact his ability to work as noted in the questions above*," her treatment notes do not mention any complaints of anxiety in review of symptoms, no clinical findings of anxiety of examination nor any treatment for such condition (see e.g. Exhibits 1F; 5F; 11F). More specifically, the claimant is typically noted to be alert and oriented with normal mood and affect, which clearly does not support Dr. Dunmyer's opinion here. Therefore, the undersigned gives Dr. Dunmyer's opinion at Exhibit 7F no weight.

(*Id.*) (emphasis in original).

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Dunmyer's opinions. The ALJ articulated the weight he afforded each opinion and properly declined to afford them controlling weight—specifically, because portions of the first opinion, and the entirety of the second, were unsupported by other evidence of record. *See Blakley*, 581 F.3d at 406 ("[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.") (internal quotation omitted). *See also* 20 C.F.R. §§ 404.1527(c)(2), (4) (providing that more weight will be given to medical opinions that are consistent with the record as a whole); §§ 416.927(c)(2), (4) (same). The undersigned therefore concludes that the ALJ did not violate the treating physician rule or otherwise err in his consideration and weighing of Dr. Dunmyer's opinions.

Plaintiff further argues that the ALJ's reasons for declining to give Dr. Dunmyer's opinions[3] controlling weight do not constitute good reasons because they are "not supported by substantial evidence." (Pl.'s Statement of Errors at 13, ECF No. 10.) This argument is likewise unavailing. In support, Plaintiff highlights similarities between Dr. Dunmyer's opinion and the symptoms and limitations included in Dr. Weaver's and Dr. Offutt's reports—for example, that Drs. Weaver and Offutt each noted that Plaintiff suffers from muscle weakness below the knee and exhibits poor balance. (*Id.* at 16–17. *See also* R. at 420, 538.) Plaintiff further points to portions of Dr. Dunmyer's treatment records that support her opinion, including those detailing tenderness and decreased range of motion in the spine and knees. (*Id.* at 15–16. *See also* R. at

---

[3] Although Plaintiff initially objects to the ALJ's treatment of both of Dr. Dunmyer's opinions, his subsequent argument pertains exclusively to her opinion on Plaintiff's physical abilities. (Pl.'s Statement of Errors at 13–17, ECF No. 10.)

364, 369–70, 410–11, 413–14, 451–52.)  However, the existence of some evidence in Plaintiff's favor does not mean that the ALJ's decision to discount Dr. Dunmyer's opinion is unsupported by substantial evidence.  Even where the factual record could support two different conclusions, "the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true."  *Waddell v. Comm'r of Soc. Sec.*, 2018 WL 2422035 at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, 2018 WL 2416232 (May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Therefore, it is **RECOMMENDED** that Plaintiff's third contention of error be **OVERRULED**.

## VI.    DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those

portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE