**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Jesse A. Baker,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 2:19-cv-4323** |
| | : | |
| **Commissioner of Social Security,** | : | **JUDGE SARAH D. MORRISON** |
| | : | **MAGISTRATE JUDGE VASCURA** |
| **Defendant.** | : | |

**OPINION & ORDER**

Plaintiff, Jesse A. Baker ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the Court on the Plaintiff's Objection (ECF No. 15) to the Report and Recommendation ("R & R") issued by United States Magistrate Judge Vascura on March 30, 2020 (ECF No. 14). The Magistrate Judge recommends that the Court overrule Plaintiff's Statement of Errors and affirm the Commissioner's decision. For the reasons set forth below, the Court **OVERRULES** Plaintiff's Objections, **ADOPTS** the Magistrate Judge's R & R and **AFFIRMS** the Commissioner's decision.

**I. PROCEDURAL HISTORY**

The Magistrate Judge accurately described the procedural background as follows. Plaintiff protectively filed his application under Title II of the Social Security Act for a period of disability and disability insurance benefits on November 5, 2015. (R. at 254–60.) He filed an application under Title XVI for supplemental security income that same day. (*Id.* at 261–66.) In both applications, Plaintiff alleged a disability onset of December 31, 2013. (*Id.* at 254, 261.) Plaintiff's applications were denied initially on February 22, 2015, and upon reconsideration on April 15, 2016. (*Id.* at 194–99, 203–14.) Plaintiff sought a hearing before an

administrative law judge. (*Id*. at 215.) Administrative Law Judge Matthew Winfrey (the "ALJ")
held a hearing on February 23, 2018, at which Plaintiff, represented by counsel, appeared and
testified. (*Id*. at 103.) Vocational expert Michael A. Klein, PhD (the "VE") also appeared and
testified at the hearing. (*Id*.) On September 25, 2018, the ALJ issued a decision finding that
Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at 100–17.) On
July 30, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's
decision as the Commissioner's final decision. (*Id*. at 1–4.) Plaintiff then timely commenced the
instant action. (ECF No. 1.)

Plaintiff advances three contentions of error. (Pl.'s Statement of Errors, ECF No. 10.)
Namely, Plaintiff asserts that remand is required because the ALJ failed to: (1) include the need
for a cane in Plaintiff's residual functional capacity ("RFC"), (2) properly evaluate the
opinion of consultative examiner, Mark E. Weaver, M.D., and (3) properly evaluate the
opinions of his treating physician, Shelly Dunmyer, M.D. The evidence summary is limited
to the portions bearing on those contentions of error.

## II. THE ADMINISTRATIVE DECISION

On September 25, 2018, the ALJ issued a decision finding that Plaintiff was not disabled
within the meaning of the Social Security Act. (R. at 100–17.) The ALJ first found that Plaintiff
meets the insured status requirements through December 31, 2018. (*Id*. at 105.) At step one of
the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-
step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*,
475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and
answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the
criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his
or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual

gainful activity since December 31, 2013, the alleged onset date of Plaintiff's disability. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: closed burst fracture of twelfth thoracic vertebra; lumbar degenerative disc disease; bilateral knee osteoarthritis; and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 106.)

At step four, the ALJ described Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except occasional foot controls; occasionally climb ramps and stairs; never climb ladders, ropes, scaffolds; occasionally balance, stoop, kneel, crouch, crawl; occasional vibration; no exposure to workplace hazards such as unprotected heights or dangerous moving mechanical parts and no commercial driving.

(*Id.* at 106–07.) In assessing Plaintiff's RFC, the ALJ considered the evidence of record, including Plaintiff's hearing testimony, treatment records and other clinical and laboratory findings, and medical opinion evidence. (*Id.* at 107–11.) As to the medical opinion evidence, the ALJ assigned "partial weight" to the opinion of Plaintiff's treating physician, Shelly Dunmyer, M.D., going to physical limitations (*Id.* at 109); "no weight" to Dr. Dunmyer's opinion going to mental limitations (*Id.* at 110); "other weight" to the opinion of consultative examiner Mark E. Weaver, M.D. (*Id.*); "partial weight" to the opinions of State agency medical consultants who reviewed Plaintiff's claim file (*Id.*); and "partial weight" to the opinion of consultative examiner Ellen J. Offutt, M.D. (*Id.*)

At step five of the sequential process, the ALJ found that Plaintiff has no past relevant work. (*Id.* at 111.) Relying on the VE's testimony, the ALJ found that jobs exist in significant

---

functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id*.) Examples include order clerk, optical assembler, and callout operator. (*Id*. at 112.) The ALJ further found that Plaintiff is capable of making a successful adjustment to such employment. (*Id*.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id*.)

### III. RELEVANT EVIDENCE OF RECORD

The record evidence relevant to Plaintiff's contentions of error is summarized by source, below.

#### A. Treating Physician, Shelly Dunmyer, M.D.

##### 1. Treatment Notes

Dr. Dunmyer has been Plaintiff's primary care provider since at least January 24, 2013. (*Id*. at 329–416.) Treatment notes from Dr. Dunmyer's practice reflect visits with Plaintiff occurring roughly every three months for various diagnoses, including degenerative joint and disc diseases of the lumbar spine. (*See, e.g*., *id*. at 379, 415, 507.) Most of the visits were for follow-up and to have prescriptions re-filled. (*See, e.g., id*. at 349, 354, 357, 363, 369, 375, 450, 464, 505, 517.) On a few occasions, Plaintiff presented with additional commonplace complaints such as sore throat (*Id*. at 372, 375) or headache (*Id*. at 462). Dr. Dunmyer and her colleagues consistently documented that Plaintiff "appears well-developed and well-nourished" (*see e.g., id*. at 349, 355, 375, 396, 463, 467) and "has normal mood and affect" (*see e.g., id*. at 349, 355, 358, 375, 452, 463, 498, 502). Generally, physical examination of Plaintiff showed normal results. However, with respect to Plaintiff's back and lower extremities, treatment notes occasionally state as follows:

> Inspection revealed no erythema, edema, or eccymosis. There was tenderness over the musculature in the lumbosacral spine. Range of motion was limited in flexion and extension secondary to pain. Lower strength was 5/5 and equal. Deep tendon reflexes were 2+ and equal in the lower extremities. Light touch sensory exam was intact. Straight leg raise was negative bilaterally in a seated position.

(*Id*. at 360, 364, 451, 510, 514.) None of Dr. Dunmyer's treatment notes reflect use of a cane, or

4

a need or prescription for one.

### 2. Medical Opinions

On February 10, 2017, Dr. Dunmyer completed two Medical Source Statements related to Plaintiff's disability benefits claim: one going to his physical abilities, and a second going to his mental abilities. (*Id*. at 479–84.) In the physical Medical Source Statement, Dr. Dunmyer opined that Plaintiff is unable to lift/carry in excess of ten pounds. (*Id*. at 479.) She further opined that Plaintiff can only occasionally reach, handle, and finger; can stand and walk for a total of one hour in an eight-hour workday for ten minutes at a time; and can sit for a total of two hours in an eight-hour workday for ten minutes at a time. (*Id*. at 479–80.) Dr. Dunmyer opined that Plaintiff cannot use his feet for repetitive movements, and cannot bend, crouch, squat, crawl, or climb steps or ladders. (*Id*. at 480.) Finally, Dr. Dunmyer opined that Plaintiff is likely to have five or more unscheduled partial or full day absences from work each month due to his diagnosed conditions, pain, and/or side effects of medication. (*Id*. at 481.) She based these opinions on Plaintiff's diagnoses of "history of T12 burst fracture, lumbar [degenerative joint disease] and [left] foot drop." (*Id*.) The opinion does not discuss use of a cane.

In the mental Medical Source Statement, Dr. Dunmyer opined that Plaintiff is not limited in areas related to social interaction or adaptation. (*Id*. at 482–83.) In the area of sustained concentration and persistence, however, Dr. Dunmyer opined that Plaintiff is mildly limited in his abilities to perform and complete work tasks at a consistent pace and to carry through instructions and complete tasks independently, and moderately impaired in his ability to perform at production levels expected by most employers. (*Id*. at 483.) Dr. Dunmyer explained that "[d]ue to [Plaintiff's] physical disabilities, he does suffer from some anxiety at times. This anxiety relative to his physical limitations could impact his ability to work as noted . . . above." (*Id*.)

### B. Consultative Examiner Mark E. Weaver, M.D.

At the request of the Board of Disability Determinations, Dr. Weaver examined Plaintiff on January 21, 2016. (*Id*. at 417–20.) Dr. Weaver summarized Plaintiff's subjective report of his condition and treatment as follows:

> [Plaintiff] states that he injured his lower thoracic area spine October 16th of 2000 in a motorcycle accident when he hit a deer and he flew 30 feet, landing in a ditch, sustaining T12 burst fracture. He states that he had no surgery but wore a back brace and was in a wheelchair for eight months and had one year of physical therapy rehabilitation. He states that he still has constant lower middle back area pain with numbness in both legs, left worse than the right, and weakness in distal muscle groups of both legs, left worse than the right, with left drop foot. He states that he does not use an [ankle-foot orthosis] brace but uses high-top boots for supporting his ankles now. He is limited in sitting, standing, walking and can only lift and carry about 10 pounds occasionally. He uses a cane occasionally but does not use a walker, a wheelchair, other splints, braces, or [transcutaneous electrical nerve stimulation] unit. His only treatment now is medication from family physician Dr. Shelly Dunmeyer [sic] in Zanesville, Ohio where [Plaintiff] visits once a month. . . . He does not complain of long-tract signs or symptoms or bowel or bladder dysfunctions.

(*Id*. at 417.) Dr. Weaver went on to detail his physical exam of Plaintiff:

> Physical exam revealed a well-developed, overly nourished 37 year old male who walked with a stiff, wide-based, bilaterally everted gait and a left limp with left partial drop foot noted today. He did not use any ambulatory aids, braces, or other special equipment in the exam today. He was only able to sit or stand for about 10 minutes at a time in the exam today, complaining of lower middle back area pain with prolonged positioning. He exhibited some balance difficulties and held onto objects in the hallway and exam room for balance assistance intermittently today. He did not become short of breath or complain of chest pain after walking 40 feet up and down the hallway in the clinic or after performing physical activities in the exam. . . .

> **Musculoskeletal Examination**:
> Inspection of the upper and lower extremities showed some atrophy of the left lower extremity compared to the right and there was no atrophy of the upper extremities by measurement comparison . . . . Strength testing in manual muscle testing against resisted motion showed consistent weakness in distal muscle groups of both lower extremities, left worse than the right, but strength testing was normal in proximal lower extremities and in both upper extremities. Active and passive motion by goniometer measure was restricted in both ankle hindfoot areas but was normal in other major joints of the extremities . . . . There was no

6

> tenderness crepitus, effusion, or gross ligamentous laxity noted in
> any of the joints of the extremities today. . . .

(*Id*. at 418–19.) Based on his examination of Plaintiff, Dr. Weaver opined that:

> [Plaintiff] would probably be limited in the performance of
> physical activities involving sustained sitting, standing, walking,
> climbing, lifting, carrying, operating at heights or around
> hazardous machinery, and travel involving driving due to use
> of foot pedals. He would probably be able to perform physical
> activities involving handling objects, speaking, hearing, following
> directions, and travel not involving driving.

(*Id*. at 420.)

### C. Plaintiff's Hearing Testimony

Plaintiff testified before the ALJ at the February 23, 2018 hearing. (*Id*. at 118–45.)

During his testimony, Plaintiff confirmed that he suffered a burst fractured vertebra in October of

2000. (*Id*. at 128.) He further testified that the symptoms stemming from that injury have "gotten

way worse," prompting the subject application for disability benefits. (*Id*.) Of note,

Plaintiff testified that a doctor prescribed a cane following his injury in 2000 and that he has used

one since. (*Id*. at 127–28.) He further testified that he can walk short distances (i.e., less than a

city block) without a cane but cannot stand without it for lack of balance. (*Id*. at 132.) Plaintiff

went on to testify that: he "rarely" drives, and only for short distances, due to numbness and

swelling in his hands and fingers (*Id*. at 130); he cannot go to the grocery or do any housework

(*Id*. at 128, 131); he has no hobbies (*Id*. at 131); he has difficulty sitting for extended periods due

to back pain (*Id*. at 136–37); and he has difficulty climbing stairs due to drop foot (*Id*. at 129).

### D. Consultative Examiner Ellen J. Offutt, M.D.

On March 19, 2018, Plaintiff was examined by Dr. Offutt. (*Id*. at 535–50.) Dr. Offutt

summarized Plaintiff's subjective report of his condition and treatment as follows:

> **HISTORY OF PRESENT ILLNESS**: The claimant reports he
> has had back pain for 18 years. His last MRI was in the last five
> years and showed degenerative disk disease. He states that he takes
> Vicodin four times a day from his family doctor. He has never
> been sent to a specialist. Seven years ago, he had an increase in
> discomfort and did have 3 epidurals. He said they did not help. He
> is not clear on who performed those, but he states that he has never
> seen an orthopedic surgeon. He is not clear on why. He states he

7

needs a cane to walk because of balance. He has radiculopathy that has developed in his lower legs with weakness. He states that he can only walk about 30 feet before he has back pain or climb 3 to 5 steps and he has to put both feet on each step. He states that he injured his lower back in the year 2000 in a motorcycle accident. When he fractured T12, he had no surgery, but wore a back brace. In the recent years, he has to use a cane more often to help his balance.

(*Id*. at 535.) Dr. Offutt's physical examination of Plaintiff revealed the following:

**GENERAL**: The claimant walks with a wide-based everted gait. He then appeared to have a limp. He did walk with a cane to support him and improve his balance. He had no problems sitting or standing in the office. He would not perform many of the parts of the exam without his cane. The claimant appears stable at station and comfortable in the supine and sitting positions. . . .

**NEUROLOGICAL**: . . . The claimant had decreased strength in his lower extremities with minimal sign of atrophy. Sensory modalities were abnormal and that he had decreased pinprick sensation in both legs to just below the knee. . . .

Cerebellar function was difficult to test because he refused to stand without his cane. He stated he could not walk on his heels or toes or perform tandem walking or stand on each foot. He could squat about half way.

(*Id*. at 537–38.) Based on her examination, Dr. Offutt summarized her opinion as follows:

**SUMMARY**: The claimant is a 39-year-old male who was in a motorcycle accident in the year 2000 and fractured T12. He states that he was in physical therapy for a period of time, but still has weakness in his lower legs, especially on the left and was manifested by his physical exam. He does have weakness. . . . I believe he would not be able to climb steps easily. He would not be able to walk easily. He could use his cane. I believe he can sit in an unrestricted fashion. He does take Vicodin for his discomfort. He would not be able to perform a job where he used foot pedals. He states he does not drive. He can walk from 30 to 60 feet with his cane before he has too much back discomfort or has cramps in his legs. . . .

It is difficult[ to] evaluate this man, seeing him only once. His grip strength was difficult to evaluate because he would not close his fingers around mine and actually squeeze. So, I believe that the

> grip strength is not accurate. He does have some neurological damage that has weakened his legs below the knee. He would not be able to walk on an uneven surface or climb steps regularly or climb a ladder. He would have difficulty squatting . . . .

(*Id*. at 538–39.) Dr. Offutt went on to complete a Medical Source Statement, in which she opined, *inter alia*, that Plaintiff requires the use of a cane to ambulate, that Plaintiff can ambulate only 10 feet without the use of a cane, and that the cane is medically required. (*Id*. at 545.)

## IV. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

"A decision is supported by substantial evidence where a reasonable mind could find that the evidence is adequate to support the conclusion reached." *Dugan v. Comm'r of Soc. Sec*., 742 F. App'x 897, 900 (6th Cir. 2018) (citation omitted). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec*., 581 F.3d 399, 406 (6th Cir. 2009).

## V. DISCUSSION

Plaintiff's present objections mirror those he presented to the Magistrate Judge. He first maintains that the ALJ's reasons for declining to assign Dr. Dunmyer's opinion controlling weight are insufficient. (ECF No. 15 at 2.) Mr. Baker secondly argues that the ALJ improperly determined that his cane was not medically necessary. (*Id*. at 3.) Third, and finally, Mr. Baker asserts that the ALJ improperly failed to obtain additional information from Dr. Weaver before finding that Dr. Weaver's opinion was overly vague. (*Id*. at 4.) None warrant reversal.

### A. Substantial Evidence Supports the ALJ's Decision About Dr. Dunmyer's Opinion.

Mr. Baker claims that the ALJ erred by "rejecting Dr. Dunmyer's opinions because the ALJ mistakenly believed that the record did not contain any evidence supporting Dr. Dunmyer's opinions." (ECF No. 15 at 3.) After *de novo* review, the Court finds no such error.

First, the ALJ is not required to "'discuss every piece of evidence in the record to substantiate'" his decision. *Conner v. Comm'r of Soc. Sec*., 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec*., 99 F. App'x 661, 665 (6th Cir. 2004)). Thus, the ALJ was under no obligation to discuss and differentiate each piece of evidence when deciding what weight to assign to Dr. Dunmyer's opinion. And, there is substantial evidence in the record to support the ALJ's decision in this regard. The ALJ did not grant Dr. Dunmyer's opinion the controlling weight typically afforded to those of treating physicians because it was not well supported by medically acceptable clinical and laboratory diagnostic techniques and was not consistent with the other substantial evidence in Mr. Baker's case record. 20 C.F.R. § § 404.1527(c)(2), 416.9279(c)(2). Instead, the ALJ placed reduced weight on her opinion of Mr. Baker's physical abilities because:

> At Exhibit 6F, Dr. Dunmyer provided an opinion that would
> provide for the claimant only being able to sit, stand and/or walk

for a total of four hours in an eight hour workday and an inability
to perform listed postural activities; yet, within her treatment notes
as discussed above, there are no significant clinical abnormalities
documented beyond at time [sic] the claimant's lumbosacral range
of motion being limited inflexion and extension secondary to pain
(*see e.g.* Exhibits 1F; 5F/4; 11F). Typically, he is noted to have
negative straight leg raising in the seated position and while at
times, he is noted to have tenderness and reduced range of motion
at the knees, other times, there are normal findings. There is no
clinical evidence to support the claimant would be limited to one
hour standing or walking, or two hours sitting. Additionally, Dr.
Dunmyer provided a conclusory opinion with respect to anticipated
partial or full day unscheduled absences from work due to the
diagnosed conditions, pain and/or side effects of medication; yet
again, such an assumption is not supported by the evidence of
record, including Dr. Dunmyer's own notes. Moreover, she does
not provide sufficient clinical and laboratory data to support her
conclusion, merely a statement of the claimant's alleged diagnoses.
Therefore, the undersigned gives Dr. Dunmyer's opinion . . .
partial weight. . . .

(ECF No. 14 at 18 quoting R. at 109.) The ALJ's decision gives no weight to Dr. Dunmyer's

opinions as to Mr. Baker's mental abilities because Dr. Dunmyer is not a mental health

specialist, her notes reference no claimed anxiety from Mr. Baker or treatment for same, and her

notes indicate that Mr. Baker is typically alert with normal mood and affect. *Id.* In sum, the ALJ

determined that "the severity of the limitations contained within Dr. Dunmyer's opinion were not

supported by the other evidence of record." (ECF No. 14 at 18.)

Under these circumstances, the Magistrate correctly held that the ALJ would have erred

in giving Dr. Dunmyer's opinions controlling weight because her opinions were inconsistent

with the other substantial evidence in the case record. *See Blakley*, 581 F.3d at 406 ("[i]t is an

error to give an opinion controlling weight simply because it is the opinion of a treating source if

it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or

if it is inconsistent the with other substantial evidence in the case record.") (quoting Soc. Sec.

Rul. 96-2p, 1996 SSR LEXIS 9 at *5, 1996 WL 374188, at *2 (July 2, 1996)); *see also* 20 C.F.R.

§§ 404.1527(c)(2), (4) (providing that more weight will be given to medical opinions that are consistent with the record as a whole);

§§ 416.927(c)(2), (4) (same). And while Mr. Baker provided evidence supporting Dr. Dunmyer's opinions, the Court declines to interfere with the ALJ's zone of choice. *See Mullen,* 800 F.2d at 545. Substantial evidence supports the ALJ's decision and Mr. Baker's first objection is **OVERRULED**.

### B.  Substantial Evidence Supports the ALJ's Determination that a Cane was not Medically Necessary.

Mr. Baker next takes issue with the ALJ's decision to not include the use of a cane in Mr. Baker's RFC. (ECF No. 15 at 3.) In particular, he argues that the record includes Dr. Offutt's opinion indicating a cane is necessary such that the ALJ erred in implying that a prescription for a cane was necessary to establish medical necessity. *Id*. at 3-4.

The R & R correctly provides that if a cane is not medically required, it is not considered a limitation on a claimant's ability to work, *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002), and an ALJ is not required to incorporate the cane into the RFC. (ECF No. 14 at 11). Further, Social Security Ruling 96-9p instructs as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Mr. Baker maintains the burden to prove through clinical evidence that a cane is medically required. *Strain v. Comm'r of Soc. Sec. Admin*., No. 5:12-cv-1368, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013).

He attempts to satisfy that burden by relying upon Dr. Orcutt's Medical Source Statement, in which she states that Mr. Baker requires a cane to ambulate. (R. at 545.) Mr. Baker notes that the ALJ's decision, which excludes the cane from the RFC, notes that there was no prescription for a cane in the record. (ECF No. 15 at 4.) From this, he infers that the ALJ rejected Dr. Orcutt's opinion on the cane issue solely because the ALJ falsely believed that a prescription was necessary.

His argument is unavailing because the ALJ provided several examples of conflicting evidence in the record when determining that a cane was not medically necessary. Specifically, as the R&R summarizes, the ALJ noted that: Plaintiff has made conflicting statements as to when and how often he relies on a cane (R. at 108, 132, 151); Plaintiff has made conflicting statements as to whether a cane was ever prescribed (R. at 108, 128, 151); that Plaintiff did not produce documentary evidence of a prescription for a cane (R. at 108); and the record did not include any medical evidence of Plaintiff's use of a cane outside of his encounter with Dr. Offutt (R. at 108, 418, 537). The ALJ further assigned partial weight to Dr. Offutt's opinion because Mr. Baker self-limited his participation in the examination.

"[W]here there is conflicting evidence concerning the need for a cane, 'it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.'" *Forester v. Comm'r of Soc. Sec.*, No. 2:16-CV-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) (quoting *Foreman v. Comm'r of Soc. Sec.*, No. 2:10-cv-1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012)). The Court must instead determine whether the ALJ's decision is supported by substantial evidence. *See Rogers*, 486 F.3d at 241. Here, the noted inconsistences and Mr. Baker's self-limitations during Dr. Offutt's examination establish substantial evidence supporting the ALJ's determination of the cane question. Mr. Baker's second objection is **OVERRULED**.

### C. The ALJ Properly Described Dr. Weaver's Opinion as Vague.

Lastly, Mr. Baker finds fault with the ALJ's decision because the ALJ did not request more information from Dr. Weaver after characterizing his consultative opinion as vague. (ECF No. 15 at 4; *see also* R. at 148.) But vagueness is not the standard; rather, the pertinent inquiry is whether the opinion is inadequate or incomplete. The R&R properly concludes that Dr. Weaver's opinion is neither.

An ALJ reviews a consultative report to determine whether the specific information requested has been furnished. (ECF No. 14 at 13). 20 C.F.R. §§ 404.1519p(a), 416.927p(a). As the R & R notes, if the ALJ determines that the report is "inadequate or incomplete," the ALJ will contact the consultative examiner to request the missing information or a revised report. 20 C.F.R. §§ 404.1519p(b), 416.927p(b). "Adequacy" refers to whether the report provides "evidence which serves as an adequate basis for decisionmaking in terms of the impairment it assesses." 20 C.F.R. §§ 404.1519p(a)(1), 416.927p(a)(1). *See also Dooley v.Comm'r of Soc. Sec.*, 656 F. App'x 113, 122 (6th Cir. 2016). A complete report will generally include:

> (i)     the claimant's chief complaint(s);
> (ii)    a detailed description, within the area of the examiner's specialty, of the history of such complaint(s);
> (iii)   a description and disposition of pertinent findings from examination or testing;
> (iv)   the results of any testing performed;
> (v)    the claimant's diagnosis and prognosis; and
> (vi)   a medical opinion.

20 C.F.R. §§ 404.1519n(c), 416.919n(c). *See also* 20 C.F.R. §§ 404.1519n(d), 416.919n(d) ("When the evidence we need does not require a complete consultative examination . . . , we may not require a report containing all of the elements in paragraph (c)."). However, "the absence of a medical opinion in a consultative examination report will not make the report incomplete." 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6).

14

In keeping with those requirements, Dr. Weaver's January 21, 2016 report: (1) recapped Mr. Baker's subjective complaints and Mr. Baker's recitation of his medical history; (2) summarized the results of Dr. Weaver's physical examination of Mr. Baker; (3) described Dr. Weaver's manual testing of Mr. Baker; (4) provided a "probable" diagnosis of chronic lower middle back pain with bilateral distal lower extremity radiculopathy; and (5) detailed probable restrictions for work-related activities. (R. at 417-25.) Dr. Weaver's report was therefore complete under 20 C.F.R. §§ 404.1519n(c), 416.919n(c) and the ALJ's description of Dr. Weaver's report as "vague" changes nothing. (R. at 110.) *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 122 (6th Cir. 2016) (finding that ALJ was not required to contact consultative examiner whose opinion was found to be vague and unsupported by the evidence). The Court concurs with the R&R's suggestion that the ALJ did not err by declining to solicit more information from Dr. Weaver and **OVERRULES** Mr. Baker's final objection.

## VI. CONCLUSION

Based upon the foregoing, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, and after a *de novo* determination of the record, this Court concludes that Plaintiff's objections to the R & R of the Magistrate Judge are without merit. The Court thus **OVERRULES** the Plaintiff's Objection (ECF No. 15), **ADOPTS** the Magistrate Judge's R & R (ECF No. 14), and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**